**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**LINDA THOMPSON, On behalf of the Wrongful
Death Beneficiaries of William A. Thompson**                             **PLAINTIFF**

**V.**                                                              **CAUSE NO.: 3:09CV113-SA-SAA**

**BENTON COUNTY BOARD OF SUPERVISORS, et al.**              **DEFENDANTS**

**MEMORANDUM OPINION**

William A. Thompson was housed at the Benton County Jail on May 12, 2008. Plaintiff, Thompson's wife, contends she delivered Thompson's prescribed medication, the anti-depressant Lexapro, to be given to him by the jail staff on a daily basis. Thompson was later released from the Benton County Jail.

On October 20, 2008, Thompson was again incarcerated in the Benton County Jail. Plaintiff contends no one at the Benton County Jail contacted her regarding her husband's medication; therefore, she assumed the Jail was providing for his medical care due to their prior knowledge of his prescription. Six days later, Thompson hung himself at the jail.

Linda Thompson filed this action in the Northern District of Mississippi on October 15, 2009. As a wrongful death beneficiary of William A. Thompson, Plaintiff alleges that Defendants were deliberately indifferent to William A. Thompson's medical needs and failed to properly train Benton County jail staff. Defendants have filed a Motion for Qualified Immunity [11].

*Qualified Immunity Standard and Analysis*

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322,

324 (5th Cir. 1999)). To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S. Ct. 1955 (quotation marks, citations, and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (May 18, 2009) (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'–'that the pleader is entitled to relief.'" Id. at 1950, 173 L. Ed. 2d 868 (citing FED. R. CIV. P. 8(a)(2)).

The doctrine of qualified immunity shields government officials from suit in their individual capacity if particular conditions are met. Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part by* Pearson v. Callahan, — U.S. —, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (Jan. 21, 2009). To overcome an assertion of qualified immunity, a plaintiff bears the initial burden of showing that the officer's conduct violated a constitutional or statutory right. Hope v. Pelzer, 536 U.S. 730, 736, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); Saucier, 533 U.S. at 201, 121 S. Ct. 215; Michalik v. Hermann, 422 F.3d 252, 258 (5th Cir. 2005); Williams v. Kaufman County, 352 F.3d 994, 1002 (5th Cir. 2003). The inquiry ends if the allegations do not support a finding of constitutionally impermissible conduct. Saucier, 533 U.S. at 201, 129 S. Ct. 808; Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003).

The Fifth Circuit laid out the proper standard for analyzing wrongful death claims for suicide by pretrial detainees in Hare v. City of Corinth, Mississippi, 74 F.3d 633 (5th Cir. 1996) (Hare II). The court first noted that a pretrial detainee's rights spring from the Fourteenth Amendment, and encompass any rights enjoyed by convicted prisoners under the Eighth Amendment, although reference to the latter is improper before conviction. Id. The court concluded that "a state jail official's constitutional liability to pretrial detainees for episodic acts or omissions should be measured by a standard of subjective deliberate indifference." Id. at 643; Gibbs v. Grimmette, 254 F.3d 545, 548 (5th Cir. 2001). To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an obvious need for protection from self-inflicted harm. When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is also appropriate. Scott v. Moore, 114 F.3d 51, 53-54 (5th Cir. 1997) (en banc).

The second part of the qualified immunity analysis is to determine whether the Defendants' conduct was objectively unreasonable in light of clearly established law at the time of Thompson's suicide. First, the plaintiff must show that the right was clearly established at the time of the violation. Hope, 536 U.S. at 739, 122 S. Ct. 2508; Saucier, 533 U.S. at 201, 121 S. Ct. 2151; Hare v. City of Corinth, Miss., 135 F.3d 320, 326 (5th Cir. 1998) (Hare III). A legal right is "clearly established" if pre-existing law sufficiently defines the right so that a reasonable public official would understand whether his actions were constitutional in the situation confronting him. Hope, 536 U.S. at 739, 122 S. Ct. 2508; Williams, 352 F.3d at 1002-03.

If the law is sufficiently clear, a plaintiff must ultimately prove that the officer's actions were objectively unreasonable within that legal context. See Saucier, 533 U.S. at 206, 121 S. Ct. 2151;

3

Hare III, 135 F.3d at 326. The analysis is "based on the viewpoint of a reasonable official in light of the information then available to the defendant . . . ." Freeman v. Gore, 483 F.3d 404, 411 (5th Cir. 2007). Consideration is given to all facts known to the defendant, but not to a particular defendant's state of mind. Thompson v. Upshur County, Tex., 245 F.3d 447, 457 (5th Cir. 2001).

The defendant official's actions are held to have been objectively reasonable unless all reasonable officials in the same circumstances would have recognized that the defendant's conduct violated the plaintiff's constitutional rights. Id. If the evidence gives rise to a difference of opinion as to the lawfulness of the action among reasonably competent officers, the official is entitled to qualified immunity. Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). Reasonableness may be decided as a matter of law provided that the underlying facts are not in dispute. Jacobs v. West Feliciana Sheriff's Dept., 228 F.3d 388, 394 (5th Cir. 2000).

Plaintiff alleges that the Jail had notice that Thompson was taking Lexapro; therefore, the individual defendants were subjectively aware of his risk of suicide. Taking the facts in the light most favorable to Plaintiff, the Court cannot find the Benton County Board of Supervisors violated Thompson's constitutional rights. Even if knowledge that Thompson was on Lexapro could be imputed to the Board, Plaintiff has not shown that the Board members were deliberately indifferent to protecting Thompson from self-harm. The Court will not infer that solely because a pretrial detainee is prescribed an anti-depressant, without more, that he is suicidal. Plaintiff has cited no authority for this proposition.

Even if the Court assumes Plaintiff has met this first prong, however, the second prong of the qualified immunity analysis is also dispositive in this instance. See Pearson, 129 S. Ct. at 818, 172 L. Ed. 2d 565 (stating that the rigid structure of Saucier is no longer required and that "the

judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

Plaintiff alleges that Defendants were objectively unreasonable in providing medical care for Thompson based on their prior knowledge that Thompson was prescribed anti-depressants. With jailhouse suicide cases in particular, courts cannot deny qualified immunity for mere "negligent inaction" by the state actors. Jacobs, 228 F.3d 388, 395 (5th Cir. 2000). In other words, a clearly established right of the detainee is not violated by a "mere oversight." Lemoine v. New Horizons Ranch & Center, Inc., 174 F.3d 629, 635 (5th Cir. 1999). The defendant must have "subjective knowledge of a substantial risk of serious harm to a pretrial detainee but respond with deliberate indifference to that risk." Hare II, 74 F.3d at 650. Indeed, to defeat qualified immunity the Plaintiff must establish that the state actors in this case were aware of a substantial and significant risk that Thompson might kill himself, but effectively disregarded it. See Jacobs, 228 F.3d at 395; Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1984, 128 L. Ed. 2d 811 (1994).

Here, the Benton County Jail's notice that Thompson was taking Lexapro over five months prior to his October incarceration was not sufficient notice that there was a substantial and significant risk that he might harm himself. There is no allegation in the record that Plaintiff informed the Jail of any suicidal tendency or of any prior attempts at suicide by Thompson. A prescription for an anti-depressant does not equal a substantial risk of serious harm. Thus, the Defendants' actions were objectively reasonable, and they are entitled to qualified immunity in their individual capacities.

A municipality's failure to train its officers can give rise to § 1983 liability. City of Canton v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); Pineda v. City of Houston,

5

291 F.3d 325, 331 (5th Cir. 2002). To successfully hold the Benton County Board of Supervisors individually liable on this basis, Plaintiff must show that (1) the Sheriff failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of Thompson's rights; and (3) the failure to train or supervise constituted deliberate indifference to Thompson's constitutional rights. See Brumfield v. Hollins, 551 F.3d 322, 332 (5th Cir. 2008); Pineda, 291 F.3d at 331; Brown v. Bryan County, 219 F.3d 450, 457 (5th Cir. 2000).

In this specific context, a showing of deliberate indifference generally requires "a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights.'" Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003) (quoting Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001)). "[A] plaintiff [must] demonstrate 'at least a pattern of similar violations'" arising from training or supervising "that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'" Id. (quoting Thompson, 245 F.3d at 459). A limited exception for single-incident liability exists only "where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." Id. at 372.

Plaintiff has failed to offer any evidence to support such a finding. The record does not support a causal connection between the alleged failure to train and Thompson's tragic death. Nor does the evidence indicate a pattern of similar violations or anything to support application of single-incident liability. Thus, the Benton County Board of Supervisors are entitled to individual qualified immunity on Plaintiff's failure to train and supervise claims.

6

Accordingly, Defendants' Motion for Qualified Immunity in their individual capacities is GRANTED.

SO ORDERED, this the 12th day of April, 2010.

                                      **/s/ Sharion Aycock**
                                      **U.S. DISTRICT JUDGE**